## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
**UNITED STATES OF AMERICA** )
)
)
**v.** )                         **CRIMINAL NO.**
)                               **03-10317-JLT**
)
**JOHN PAKALA** )
_____ )

## ORDER
## AND
## REPORT AND RECOMMENDATION
### August 16, 2011

**HILLMAN, M.J.**

### Nature of the Proceeding

By Order of Reference dated March 28, 2011, the Motion Under 28 U.S.C. §2255 To

Vacate, Set Aside, Or Correct Sentence (Docket No. 171) filed by the Defendant, John Pakala,

has been referred to me for Findings and Recommendations pursuant to 28 U.S.C. §

636(b)(1)(B), and the Government's Motion For An Order Permitting Disclosure Of Attorney-

Client Information (Docket No. 175), has been referred to me for disposition pursuant to 28

U.S.C. §636(b)(1)(A).

## **Nature of the Case**

John Pakala ("Pakala" or "Petitioner") has filed a motion under 28 U.S.C. §2255

(Docket No. 171)("Petition") in which he asserts his guilty plea should be vacated and he should

be granted a new trial on the following grounds:

Ground One: He received ineffective assistance of counsel as the result of his lawyer's failure to advise him of the collateral consequences of appearing for the first day of trial dressed in his prison clothes.

Ground Two: He received ineffective assistance of counsel as the result of his lawyer's failure to object, on Sixth Amendment right of confrontation grounds, to the admission of weather reports into evidence.

Ground Three: He received ineffective assistance of counsel at sentencing as the result of his lawyer's failure to: secure a mental health expert to testify on his behalf; file a timely motion for mental health testing; and present additional evidence relating to alopecia and stress associated with his lengthy pre-sentencing incarceration.

Ground Four: He received ineffective assistance of counsel at sentencing and on his direct appeal as the result of his trial and appellate lawyers' failure to argue that his two Florida convictions were not separate crimes and therefore, the court wrongly determined that there were sufficient predicate convictions to subject him to a mandatory minimum fifteen year sentence under the Armed Career Criminal Act.

Ground Five: His sentence was unlawfully enhanced based on a non-qualifying conviction.

Ground Six: He received ineffective assistance of appellate counsel because his lawyer suffered from a medical condition which rendered him unable to provide adequate legal representation.

Ground Seven: He received ineffective assistance of counsel as the result of his lawyer's failure to raise the proper legal challenge concerning the issue of whether his right to a speedy trial had been violated.

The Government argues that Pakala's stated grounds for relief lack merit and therefore,

his Petition should be denied.

## Facts

### *The First Day of Trial*

Pakala was charged with being a felon in possession of firearms and possession and sale of stolen firearms. Prior to trial, Pakala filed a motion to suppress and a motion to dismiss the indictment on speedy trial grounds; both motions were denied. Pakala was the tried before a jury. On the first day of trial, Pakala appeared in court dressed in a white sweatshirt and orange pants, *i.e.,* his prison clothing. Arrangements had been made for Pakala to change into non-prison garb, but Pakala was told by prison personnel that he could not change prior to being transported to the courthouse and that they would not transport his clothing with him. The trial judge indicated that he would postpone the start of the trial and send someone from the United States Marshal's Office to go to the prison facility and get the clothing. There was a pause in the proceedings, after which counsel for Pakala informed the court that he was willing to go forward that day wearing his prison clothing. Specifically, the following exchange took place:

**The Court:** The first thing I want to take up is the question of the defendant's dress. He is appearing before me with a white sweatshirt and orange pants. And the arrangements were made for him to be able to change but evidently they took the clothes to the wrong place.

**Ms. Donohue:** Your Honor, apparently in the-- the clothes were brought to Middleton. And my client asked for them to bring the clothes. They wouldn't allow him to change. They made him wear the jumpsuit for transportation. And he asked if the clothes could come and he could change here.

He was told today that that would not be allowed. Not by, I'm not saying by the federal court but by the people in Middleton, that he would not be allowed to change. They wouldn't allow him to do it there and they claimed that he could not bring the clothes here. Unfortunately that is what happened this morning.

\

And I didn't know this until I got here. My client got into a dispute with them for thirty minutes this morning over it asking to have the clothes transported

with him so he could change at the Marshal's Office. And he was told, in fact, that that was not allowed for him.

**The Court**: No, that would be allowed. He certainly could change.

I mean, now the question is how do I get the clothes or do we just go forward anyway? Is it a secret that he is in custody?

**Ms. Donohue:** Well, Judge, you know, I think it's going to be-- let me put it this way: At one point the government was offering a reported telephone conversation that may have alluded to his custody but now the government is not offering that. And so--

....

So now that -- may change things further vis-a-vis the dress because--

**The Court:** You have got to take a position. I other words, I don't want to just ramble on about it. We made arrangements-- Zita called, told everybody that the clothes could be changed. I am saying now they can be changed.

I don't know how long it is going to take to go to Middleton and get them. I hate to have a wasted day; but, on the other hand--

**Ms. Donohue:** Your Honor, if I may just have one moment to talk to my client?

**The Court:** Yes

(Whereupon, counsel conferred with the defendant.)

[Court inquires of Assistant U.S. Marshal as to how long it would take to get Petitioner's clothes from Middleton]

**Ms. Donohue**: Your Honor, Mr. Pakala is willing to go forward today and have the clothes for tomorrow. That's his decision.

**The Court**: Okay. Is that you decision, sir?

**The Defendant:** Yes, sir.

**The Court:** Okay. Then we will proceed. We don't have to mention, nobody has to mention the fact that he is incarcerated. If somebody looks and sees orange pants, I mean, that doesn't require any explanation.

And we will endeavor, as you always are, the Marshal Service always is very careful to make sure that the defendant is transported when the jury is not in a place to see him.

*Trial Transcript ("Tr.")*, *Day One,* at pp. 3-6.

Also on the first day of trial, Robert Boudrow, the victim, testified for the Government. When asked if would point out Pakala in the courtroom and describe what he is wearing for the jury, Boudrow responded: "John is sitting at the table (indicating) with a white shirt and orange pants." *Id.*, at p. 89. Pauline Hassett, a friend of Pakala, also testified for the Government on the first day of trial. When asked to point Pakala out and describe what he was wearing for the jury, Hassett responded: "Mr. Pakala is wearing an orange jump suit and a white T-shirt (indicating)." *Id.*, at p. 132.

### The Substantive Offense; Admission Of The Weather Reports

Pakala was hired by Boudrow to assist with renovations at a church in Revere, MA, where he, Boudrow, was a deacon and pastoral counselor. Because Pakala appeared to be homeless, Boudrow invited him to stay with him at his Chelsea home. On June 18, 2008, Boudrow left for work in the afternoon, leaving Pakala alone in his residence. When Boudrow returned home at about 9:00 p.m., Pakala was gone, as were two gun cases which Boudrow had stored in his bedroom closet; the cases contained five guns. Other items were also missing, including the keys to the gun cases and a black suitcase. Boudrow could smell cigarette smoke near the bedroom closet; neither Boudrow nor his wife smoked, but Boudrow had observed Pakala smoking. Boudrow reported the theft to the police. Pakala never returned to the Boudrow home, even though he had left his truck and dog there.

Pakala had told his friend, Hassett, that he was staying with a "church guy" and had seen several guns in the bedroom upstairs; he also told her that he planned to steal the guns at the end

of the week after he got paid. On June 18th, Pakala told Hassett that he had stolen the guns.

Hassett remembered the specific date because it was raining. Hassett further testified that Pakala had told her that he had stolen the guns and that he and another man had subsequently sold them. She also gave the police a black suitcase which Pakala had left on her porch; it was the suitcase which had been stolen from the Boudrow home.

Defense counsel's questioning of Hassett and other witnesses raised questions concerning Hassett's credibility. On the second day of trial, in order to substantiate a part of Hassett's testimony, the Government introduced two weather reports showing that it had rained on June 18, 2003. The weather reports were admitted over defense counsel's objection.

Another Government witness testified that he and some friend had bought five guns from Pakala and his co-defendant, Angel Gonzalez, on June 18 2003. The police ultimately recovered some, but not all, of the firearms. Pakala was convicted on both counts, *i.e.,* being a felon in possession and of firearms and possession and sale of stolen firearms. *See generally United States v. Pakala*, 568 F.3d 47,49-50 (1st Cir. 2009).

*The Sentencing*

The pre-sentence report found that Pakala had three prior convictions for crimes of violence[1] and therefore, was subject to the Armed Career Criminal Act ("ACCA"). Pakala objected to the two Florida convictions being included for purposes of him being subject to the ACCA– the basis for his objection was that the Florida statute under which he was convicted did not warrant treatment as a violent felony and that the court could not use police reports in determining whether he had, in fact, committed a violent felony. Among the other arguments he

---

[1] An attempted burglary conviction in Nevada and two convictions for third-degree burglary of an unoccupied structure in Florida.

6

raised at sentencing was that he had been "subjected to extreme 'mental and physical distress'" and had received inadequate medical and mental health treatment while incarcerated awaiting trial. *Id.*, at 51. The court determined that Pakala was as an Armed Career Criminal and sentenced him to 235 months incarceration. *Id.*, at 51-52.

*Pakala's Direct Appeal*

On appeal, Pakala raised four issues: (1) the district court erred by admitting the weather reports into evidence because their probative value was outweighed by their prejudice[2]; (2) the district court erred when it found that his two prior Florida convictions were "violent felonies" for purposes of the ACCA; (3) the district court failed to make findings to support the sentence imposed, in violation of 18 U.S.C. §3553(c)[3]; and (4) his right to a speedy trial was violated because the district court failed to adequately "articulate its reasons for granting two 'ends of justice' continuances". *Id.*, at 52-57. On June 12, 2009, the First Circuit denied Pakala's direct appeal, "affirm[ing] the district court in all respects." *Id*., at 61. Pakala filed a petition for panel rehearing and rehearing en banc, which was denied. Thereafter, Pakala filed a petition for writ of certiorari with the United States Supreme Court, which was denied on January 14, 2010. On January 10, 2011, Pakala filed his Petition[4].

---

[2] Pakala also asserted that the weather reports had not properly been admitted at trial and therefore, should not have been made available to the jury during deliberations and that they had never been published to the jury when offered by the Government.

[3] Specifically, he argued that the court failed to discount his long criminal history which was devoid of violent felonies, failed to take into account his history of substance abuse, and his sentence was unreasonable because the court failed to grant a downward departure.

[4] The Government acknowledges that the Petition was timely filed.

**<u>Discussion</u>**

*Pakala's Request For An Evidentiary Hearing*

The determination of whether to hold an evidentiary hearing is within the discretion of

the court.  In making this determination, the court accepts as true the petitioner's non-frivolous

factual claims, based on the existing record.  Where the record before the court show

conclusively that the petitioner is not entitled to relief, the court is not required to hold a hearing.

Thus, the "court may forego such a hearing when 'the movant's allegations, even if true. Do not

entitle him to relief, or ... [when] the movant's allegations 'need not be accepted as true because

they state conclusion instead of facts, contradict the record, or are inherently incredible'". *Owens*

*v. United States*, 483 F.3d 48, 58 (1ˢᵗ Cir. 2007)(alterations in original)(citation to quoted case

omitted).

In this case, Pakala fails to raise any issues of material fact and the court can determine

on the basis of the record before it that he is not entitled to relief.  Therefore, his motion for an

evidentiary hearing should be denied.

*Whether Counsel Was Ineffective For Failing To Advise Petitioner Of Potential Collateral*
*Consequences Of Wearing Prison Clothes At His First Day Of Trial*

On the first day of trial, Pakala appeared in court dressed in his prison garb, which

consisted of a white sweatshirt and orange pants.  Pakala had intended to dress in street clothes,

but there was a misunderstanding with the facility where he was being held about his right to

bring his regular clothing with him to court so that he could change prior to the start of his trial.

The court engaged in a colloquy with Petitioner's counsel concerning whether to delay the start

of the trial so that his clothes could be retrieved.  After consulting with Petitioner, his counsel

informed the court that he would go forward that day and wear his regular clothes for the

remainder of the trial. When asked by the court, Petitioner confirmed that he would go forward that day dressed in his prison garb. Two Government witnesses were asked to identify Petitioner for the jury and both referred to his white shirt and orange pants; one of the witnesses, Hassett, stated that Petitioner was wearing an "orange jumpsuit". Petitioner's trial counsel did not object to the witnesses's references to his attire.

Pakala asserts that his lawyer's failure to advise him of the possible consequences of proceeding on the first day of his jury trial while dressed in his prison clothing constitutes ineffective assistance of counsel. To succeed on his ineffective assistance claim, Pakala must satisfy the two prong test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052 (1984). Specifically, "[Pakala] must establish that:

> (1) 'counsel's representation fell below an objective standard of reasonableness,' and (2) "'there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' The review of counsel performed under the first prong is highly deferential; a petitioner must show that "given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." Counsel's tactical decisions cannot generally form a basis for an ineffective assistance of counsel claim. '[T]he Constitution pledges to an accused an effective defense, not necessarily a perfect or a successful defense.' Indeed, "[a] fair assessment of attorney performance requires that every effort by made to eliminate the distorting effects of hindsight[.]'

> The second prong of the *Strickland* test requires a petitioner to demonstrate actual prejudice from the alleged mistakes of counsel. This is a 'but for test', requiring that but for the attorney's conduct, the result would have differed. Further, to prevail on a Section 2255 ineffective assistance claim, a petitioner must establish both ineffective assistance of counsel and entitlement to Section 2255 relief by a preponderance of the evidence.

*LaFortune v. United States*, Crim. No. 03-10366-PBS, 2011 WL 2119330, at *2 (D.Mass. May 26, 2011)(alterations in original)(internal citations and citations to quoted cases omitted).

A defendant's due process right is violated if he is made "to stand trial before a jury while dressed in identifiable prison clothes ...." *Estelle v. Williams*, 425 U.S. 502, 512, 96 S.Ct. 1691 (1976). Because the "particular evil proscribed" is compulsion, a defendant must properly object to having to wear prison clothes at trial." *Id.,* at 507-10, 96 S.Ct. at 1694-96 (no compulsion where counseled defendant did not object "either before or at any time during the trial"). It is undisputed that Petitioner's counsel did not object to his appearing in court on the first day in jail attire; on the contrary, after consultation with Petitioner, she informed the court that he had no objection to proceeding the first day while so dressed. The court addressed Pakala who confirmed that he was prepared to go to trial on the first day, dressed as is.

As to the first prong of *Strickland,* because two witnesses pointed out during their testimony that Petitioner was dressed in a casual white top with orange pants/orange jumpsuit, counsel's failure to seek a continuance until Petitioner's street clothes were brought to court, in hindsight, could be looked at as unreasonable. On the other hand, there are a myriad of strategic reasons why counsel would choose to proceed with her client dressed in prison attire rather than delay the trial-- especially in a case such as this where there has been no suggestion that there were any markings on the clothing Petitioner wore to hi-light the fact that he was wearing prison garb, and it was only for the one day (it is uncontroverted that Petitioner was assured that he would be allowed to wear his street clothes for the remainder of the trial). *See United State v. Graham*, 643 F.3d 885, 895 (11th Cir. 2011)(not uncommon defense tactic for defendant to appear in jail clothes in hopes of eliciting sympathy from jury)(citing *Estelle*, 425 U.S. at 512-13, 96 S.Ct. At 1695); *see also Williams v. Anderson*, 174 F.Supp.2d 843, 862 (N.D. Ind. 2001)(where clothing, although identifiable as prison garb, was not labeled as jail clothing and defendant only appeared before jury in prison clothing on first day of trial, during voir dire, there

was no "continuing influence" on defendant's presumption of innocence and therefore, no constitutional violation occurred). Furthermore, when asked by the trial judge, Petitioner, himself, acknowledged that he was ready to proceed that day dressed in prison garb. Under these circumstances, Petitioner cannot rebut the strong presumption that counsel's conduct fell within the range of reasonable professional conduct. *See Duarte v. United States*, 81 F.3d 75, 77 (7th Cir. 1996)(defendant who does not care about appearing in prison clothing or who believes it may confer strategic advantage cannot later seek reversal on that basis).

Even if I were to assume that Petitioner has satisfied the first prong of *Strickland* (by establishing that counsel advised him to proceed on the first day of trial wearing his prison clothes and that such advice constituted conduct which fell below the professional norm), Petitioner would not be entitled to relief because he cannot establish prejudice. To satisfy the second prong of *Strickland*, Petitioner must prove that there exists "a reasonable probability" that, absent his attorney's incompetence, "the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695, 104 S.Ct. 2052. Stated another way, '[a] reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Strickland*, at 694, 104 S.Ct. at 2052. When evaluating the prejudice suffered by petitioner as a result of his attorney's "alleged deficient performance, [the court] must consider the 'totality of the evidence before the judge or jury.' A verdict 'only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" *United States v. De La* Cruz, 514 F.3d 121, 140 (1st Cir. 2008) (quoting *Strickland*, 466 U.S. at 696, 104 S.Ct. 2052)(internal citations omitted). Simply put, given the strength of the Government's case against Pakala, it is highly unlikely that the outcome of his trial would have been different had

he been dressed in street clothes that first day of trial. Thus, he cannot satisfy the second *Strickland* prong and this claim should be denied.

*Whether Counsel Was Ineffective For Failing To Object to Introduction Of Weather Reports*

The court admitted into evidence two weather reports which corroborated Hassett's testimony that it had been raining on June 18, 2003, the day she said Pakala told her he stole the guns. Defense counsel objected to admission of the reports on relevance grounds. In his Petition, Pakala asserts that his counsel was ineffective for failing to object on the grounds that admission of the weather reports would violate his Sixth Amendment confrontation rights.

First, the weather reports at issue are in the nature of business records, which are not testimonial and, therefore, their admission would not violate the confrontation clause. *See United States v. De La Cruz*, 514 F.3d 121, 133 (1st Cir. 2008)(business records such as autopsy reports are not testimonial by nature and therefore, the admission of such a report does not violate the confrontation clause). Consequently, *Pakala* cannot satisfy *Strickland's* first prong, *i.e.,* that counsel's performance was deficient. Even if I were to assume that counsel's failure to raise a Sixth Amendment/confrontation clause objection to the introduction of the weather reports violated *Strickland's* performance prong[5], I would find that he cannot prevail on this claim. The First Circuit held for purposes of *Pakala's* direct appeal that even if the trial court had erred by admitting the weather reports (a conclusion it did not reach), any such error was harmless. *Pakala*, 568 F.3d at 52-53. Therefore, *Pakala* cannot satisfy *Strickland's* prejudice prong. *See also Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994)(issues addressed on

---

[5] On direct appeal, *Pakala* asserted that admission of the weather reports was error because their probative value was outweighed by their potential prejudice.

direct appeal will not be reviewed in Section 2255 petition).  Therefore, this claim should be
denied.

*Whether Pakala Received Ineffective Assistance Of Counsel At Sentencing*

Pakala asserts that his counsel was ineffective when at sentencing, she failed to:  secure a
mental health expert to testify on Pakala's behalf;  file a timely motion for mental health testing;
and present additional evidence relating to alopecia (loss of body hair) and stress associated with
Pakala's lengthy pre-sentencing incarceration.  In support of this claim, Pakala states that he was
so stressed during his four years of incarceration prior to sentencing, that he suffered from hives
and developed alopecia.  Pakala also makes cursory reference to the fact that he had a lengthy
history of mental health issues that have been treated by doctors and medication and that the first
time that he was admitted to a hospital for treatment was when he was a juvenile.[6]

Contrary to Pakala's assertion, his counsel did raise the issue of the effect that his lengthy
pre-sentence incarceration had on his mental health, including that he had contacted alopecia due
to his mental distress.  She specifically requested a downward departure in her objection to the
pre-sentence report as the result of the mental and physical distress which he had suffered.  *See
Def's Objections to Presentence Rep.* (Docket No. 148), at p. 4.  Furthermore, counsel expressly
raised the issue at the sentencing hearing:

---

[6]  Given the context, it appears that Pakala is citing his prior mental health history in support of his stated claim that
his counsel was deficient for failing to adequately argue for a downward departure based on his mental health status
as the result of his lengthy pre-sentence incarceration.  If instead he is asserting that his counsel should have
requested a downward departure based on "diminished capacity" as the result of his prior mental health history, I
find first, that his argument goes beyond the scope of his asserted ground for relief, and second it is not sufficiently
developed and, therefore, it is waived. *Barreto-Barreto v. United States*, 551 F.3d 95 (!st Cir. 2008)(where
petitioners did not develop argument beyond mere assertion, failed to offer legal support or cite any supporting facts,
claim is waived).  In any event, Pakala's counsel did in fact request a downward departure based on his bi-polar
disorder and long term substance abuse, which was denied by the District Court. *See Pakala,* 568 F.3d at 51.

The second ground for asking for a downward departure has to do with my client's conditions of incarceration prior to trial. My client was arrested and held in state custody for two months, July 7, 2003 and thereafter on September 9, 2003 transferred to federal custody. First at Wyatt and then later at Middleton.

During those years that he has been held in custody, my client has had serious issues in terms of his health issued that have gone untreated. The Court can see, he has suffered Alopecia as a result of stress and the conditions, all of which, Judge, are documented in his medical records from Middleton. These records indicate that this condition has been contracted while in custody. It has not been treated.

*Tr., Disposition, June 28, 2007*, at pp. 11-12. Counsel went on to summarize various other ailments from which Pakala was suffering during his incarceration, including Hepatitis B and C and arthritis. *Id.* Pakala's medical records were submitted to the court. The court denied the motion for downward departure on this ground, without elaboration.

Since Pakala's counsel raised the issue of his mental health at sentencing, his request for relief focuses on counsel's failure to engage an expert to present more specific evidence of his mental health issues in support of the request for a downward departure. Whether to grant a downward departure under such circumstances is within the sound discretion of the sentencing court. *See United States v. Burroughs*, 613 F.3d 233 (D.C. Cir. 2010). Furthermore, Pakala was indigent and proceeding with court appointed counsel. Therefor, counsel would have had to apply for a medical expert under 18 U.S.C. § 3006A and in doing so, would have had to satisfy the trial judge of the necessity for appointment of such an expert. *Id.*, at 238-39. Pakala has not proffered any facts or circumstances which would suggest that such a request would have been successful. Furthermore, even his lawyer had obtained an expert to testify about the extreme stress and anxiety Pakala suffered while awaiting sentencing, his claim would fail. Pakala asserts only that due to his lengthy pre-sentencing incarceration, he was extremely anxious and stressed which led to him suffering from alopecia and hives. He does not point to any facts

which would establish that his stress and anxiety were caused by conditions of confinement which were any different from the conditions to which other pre-sentencing detainees were subjected. Under these circumstances, he cannot establish that there is a reasonable probability that if his counsel sought appointment of a mental health expert, the court would have granted a downward departure. *See Andujar v. United States*, 2009 WL 2169163, Cr. No. 05-00422 (M.D.Pa. Jul. 16, 2009)(downward departures based on pre-sentencing conditions of confinement are "highly infrequent" and do not have reasonably probability of success); *United States v. Pegross*, 2008 WL 3286263, No. 05-80949 (E.D. Mi. Aug. 7, 2008)(courts that have allowed downward departure as result of conditions of pretrial confinement have done so where petitioner can establish s/he was housed under circumstances which were qualitatively different conditions than those of other federal detainees). Since the Petitioner cannot satisfy *Strickland's* second prong with respect to this claim, it should be denied.

*Whether Pakala Received Ineffective Assistance Of Appellate Counsel As A Result Of Counsel's Medical Condition*

Pakala argues that his appellate counsel, Robert Greenspan, Esq., was deficient because he was medically unable to provide adequate representation. Specifically, he asserts that his lawyer's sight *must* have been affected by his medical condition(s) such that he was unable to make a through review of the record, which is why he failed to raise the following two issues on direct appeal: i) that Pakala was wearing his prison garb on the first day of trial; and ii) that the two predicate Florida convictions which the court found to be violent felonies for purposes of the ACCA should not have been treated as separate offenses.[7]

---

[7] I have already concluded that counsel was not ineffective for failing to raise these issues on direct appeal. Nonetheless, for the sake of completeness, I will independently examine whether counsel was ineffective for failing to raise them on appeal due to a medical condition.

In support of this claim, Pakala cites to a motion for extension of time to file a petition for rehearing and rehearing en banc which Greenspan filed with the First Circuit Court of Appeals on July 17, 2009. In that motion, Greenspan indicated that he had surgery for a detached retina on June 25, 2009, which would require a two to three week recovery period. He further stated that he suffered from glaucoma and cataracts in his "good" eye, so that he would only be able to do a limited amount of reading during the recovery period. He requested that he be given until August 5, 2009 to file the petition. Pakala also cited to a November 2010 letter Greenspan sent to him in which Greenspan indicated that he did not realize that Pakala had been wearing prison garb at the start of his trial. Greenspan also indicated that he did not think that such an issue would be sufficient to overturn Pakala's conviction, but that it might be useful to bring up with everything else. As to the Florida convictions, Greenspan indicated in that same letter that he had not heard before that the burglaries took place on one day; he further noted that that no objection had been raised at trial, and he did not believe it (the fact that the burglaries occurred on one day) was reflected in the police reports[8].

*Strickland's* two pronged test also applies to claims for ineffective assistance of appellate counsel. However, as applied to appellate counsel, the first prong of *Strickland* is difficult to meet because, to be effective, "appellate counsel ... need not (and should not) raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288, 120 S.Ct. 746(2000). With respect to the second *Strickland* prong, the petitioner must "show a reasonable probability that, but for his counsel's unreasonable failure to [raise a particular issue], he would have prevailed on his

---

[8] Contrary to Pakala's argument, Greenspan does not deny every having read the police report, rather, he states that he does not read the police report as stating that the burglaries took place on single day.

appeal." *Id.* at 285, 120 S.Ct. 746. Furthermore, the court must "presume that the result of the proceedings on appeal is reliable ... and ... require [the petitioner] to prove the presumption incorrect in his particular case." *Id.* at 287, 120 S.Ct. 746. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986)                    .

Pakala's claim must fail for the simple reason that he has failed to allege that counsel was suffering from any medical condition which would have affected his performance at the time the appeal was filed, nor has he alleged any facts which suggest that any medical condition affected counsel's performance during the appeals process. Pakala's appeal was filed on July 18, 2007, his brief in support of his appeal was filed on July 9, 2008, his reply brief was filed on October 28, 2008, his supplemental brief was filed on November 25, 2008, the case was argued before the First Circuit on December 4, 2008, and the First Circuit opinion denying the appeal was issued on June 12, 2009. Pakala has not asserted that Greenspan was suffering from any medical condition during any part of the initial appeals process. That is, Pakala has failed to allege facts which would support a finding that Greenspan's failure to raise on direct appeal the issues of his wearing prison garb on the first day of trial and whether the Florida convictions were a separate occurrence was the result of a medical condition. As noted, *after* the appeal was denied, Greenspan filed a motion (on July 17, 2009) seeking an additional period of time (until August 5, 2009) to file a petition for panel rehearing/rehearing en banc because he had *recently* undergone eye surgery (on June 25, 2009). That motion was granted; Greenspan did not request any further extensions and he filed a comprehensive petition for rehearing on August 5, 2009.

The November 2010 letter from Greenspan to Pakala states that Greenspan does not believe that the police reports from Florida reflect that the burglaries were committed on

separate days. Although, contrary to Pakala, I find this a fair reading of the documentation relating to the Florida convictions, I will assume for purposes of this discussion that Greenspan misread the documents. In the letter, Greenspan also indicated that he was not aware that Pakala had been wearing prison garb on the first day of trial. This fact may suggest that Greenspan may have overlooked this issue when preparing Pakala's appeal. However, Pakala's suggestion that Greenspan failed to raise these issues because he could not read due to a medical condition that appears to have manifested itself months later is baseless speculation.

Pakala does not assert that there were any other issues which counsel failed to raise due to his alleged medical condition. Furthermore, it is clear from the record that during the period that Pakala suggests Greenspan "must" have been suffering from a medical condition which affected his eyesight and therefore, his ability to litigate the appeal, Greenspan filed numerous documents with the First Circuit, including briefs, reply and supplemental briefs and motions; he was also present at oral argument. Under these circumstances, Pakala has failed to satisfy the first prong of *Strickland*, *i.e.,* that his counsel's performance was deficient because he was suffering from a medical condition. Therefore, this claim should be denied.

*Whether Pakala Received Ineffective Assistance Of Trial Counsel And Appellate Counsel For Failing To Argue That His Two Florida Convictions Were A Single Offense*

Petitioner argues that because his two Florida convictions occurred "on or about April 24th" and "on or about April 27th", they should have been treated as a single conviction and therefore, the ACCA would have been inapplicable; he asserts that his trial counsel was ineffective for failing to raise the issue at sentencing and his appellate counsel was ineffective for failing to raise it on direct appeal. Pakala's claim must fail. As pointed out in the Government's opposition, the charging documents, which were before the sentencing court,

make clear that the two Florida predicate convictions were for offenses that occurred on separate days. Since the offenses occurred three days apart they arise from conduct committed on two different occasions and, therefore, are separate convictions, regardless of the fact that they involved the same location[9]. Under the circumstances, trial counsel did not err by not having objected on this ground at sentencing and *a fortiori*, appellate counsel was not ineffective for failing to have raised it on direct appeal. Therefore, this claim should be denied.

*Whether Pakala's Sentence Was Unlawfully Enhanced Based On A Non-Qualifying Conviction*

Petitioner asserts that his Florida convictions for burglary of a dwelling or residence are not "violent felonies" and therefore, are not qualifying predicate offenses for purposes of him being classified as an armed career criminal under the ACCA. In support of his claim, petitioner relies on *Begay v. United States*, 553 U.S. 137, 128 S.C.t 1581 (2008).

Petitioner previously raised this claim on direct appeal; the claim was denied by the First Circuit. *Pakala*, 568 F.3d at 53-55. A Section 2255 petition may not be employed to relitigate issues which were raised and rejected on a petitioner's direct appeal. *Singleton v. United* States, 26 F.3d 233, 240 (1st Cir. 1994). Where, however, there has been an intervening change in law, a claim may be relitigated on collateral review. In this case, Petitioner does not argue that there has been an intervening change of law; on the contrary, he relies on Supreme Court precedent

---

[9] From the documents submitted by the Petitioner, he is correct that there is some ambiguity as to whether the theft to which he pled guilty occurred on April 24, 2001, or April 27, 2001. However, the charging documents indicate that he pled guilty to having unlawfully entered the location with the intent to commit a crime on *two separate occasions.*

which was available at the time of his direct appeal.[10]   Under these circumstances, this claim should be denied.

   *Whether Pakala Received Ineffective Assistance Of counsel As The Result Of His Lawyer's Failure To Raise The Proper Legal Challenge Concerning The Issue Of Whether His Right To A Speedy Trial Had Been Violated*

   In his direct appeal, Pakala argued that his case should have been dismissed due to a violation of the Speedy Trial Act, 18 U.S.C. §§3161-3173 ("Speedy Trial Act"), because the trial judge failed to articulate his reasons for granting two "ends of justice" continuances.   Pakala only challenged the exclusion of time from after August 1, 2005, the date of the suppression hearing.  Pakala did not challenge the allowance of the motions, rather he argued that in violation of the Supreme Court's edict in *Zedner v. United States*, 547 U.S. 489, 126 S.Ct. 1976 (2006), the trial court failed to articulate its reasons for allowing the motions and failed to calculate and articulate the days excluded.  The First Circuit affirmed the trial court's denial of Pakala's motion to dismiss for violation of the Speedy Trial Act.  In so doing, the court found that Pakala's two motions requesting continuances asserted statutorily authorized reasons for the delay and it was obvious the trial judge adopted those reasons, and therefore, Pakala's case was distinguishable from *Zedner* and judicial estoppel applied.  *Pakala*, 568 F.3d at 58-60.

   In his Petition, Pakala asserts that his appellate counsel was ineffective for not challenging the court's exclusion of time from the Speedy Trial Act before August 1, 2005[11].

---

[10]  Petitioner filed his Notice of Appeal on July 2, 2007. The Supreme Court issued its decision in *Begay* on April 21, 2008.  Pakala's brief in support of his appeal was filed on July 9, 2008, he filed a reply brief on October 28, 2008, and a supplemental brief on November 28, 2008.

[11]  As the Government points out, included in Pakala's submissions is a November 7, 2008 letter from Greenspan to Pakala in which Greenspan makes clear that he was carefully reviewing the Speedy Trial Act issue.  *See* Attachment to Petition.  In a November 6, 2009, letter Greenspan makes clear to Pakala that he made a tactical decision to focus on the time excluded after August 1, 2005, because he did not feel that the time excluded prior thereto could be successfully challenged; indeed, he specifically details why he felt the time was properly excluded.  *Id.*  Because

Pakala was initially indicted on October 8, 2003.  A superseding indictment was returned in this case on December 3, 2003; that indictment, which restarted the time under the Speedy Trial Act, added a second defendant to the case[12].  Thereafter, there were multiple requests by defense counsel (both Pakala's and his co-defendant's counsel) for additional time to review discovery, for time to file discovery motions (including motion(s) to compel), time to file a motion to suppress, and for various continuances relating the filing of motions/oppositions and hearing dates.  On each occasion, the magistrate judge entered a status report and/or an Order of Excludable Time, stating that time was being excluded in the interests of justice; the magistrate judge specified the reasons for the exclusion and set forth the days which were being excluded.  Furthermore, on each occasion, Pakala's counsel assented to the exclusion.   On August 4, 2004, the magistrate judge issued a final status report and sent the case to the district court judge, having essentially excluded all time up to that date.  All of the time during this period was properly excluded and there was no basis for appellate counsel to challenge the exclusion of the time.  Therefore, I will now focus on the period from August 4, 2004 until August 1, 2005.

On June 1, 2004, Pakala filed his motion to suppress and on June 17, 2004, he filed an assented to motion to sever; the Government filed its opposition to the motion to suppress on July 9, 2004.   At the time that the case was sent to the District Court Judge, Pakala's motions to suppress and to sever were pending.  The motion to sever was allowed on June 28, 2005. The

---

counsel made a tactical decision not to challenge the period before August 1, 2005, Pakala cannot satisfy *Strickland's* first prong.  Nonetheless, I will independently review Petitioner's claim that the Speedy Trial Act was violated.

[12]  Although Pakala's case and his co-defendant's case were severed for purposes of trial, until the severance, time excluded for his co-defendant would also have been excluded for Pakala.  *United States v. Casas*, 425 F.3d 23, 31 & n. 4 (1st Cir. 2005)(delay is excluded for all defendants joined for trial up until computation of latest defendant; delay for co-defendant who is later severed is also excluded until severance granted).

motion to suppress remained pending until August 1, 2005; a hearing was held on that date and the motion was denied that same day.[13] The "[speedy] trial close presumptively stops during the pendency of a defendant's motion, no matter how lengthy". *United States v. Dowdell*, 595 F.3d 50 (1st Cir. 2010); *see also* 18 U.S.C. § 3161(h)(1)(D)(formerly 18 U.S.C. § 3161(h)((1)(F))(any delay resulting from any pretrial motion, from filing of such motion through conclusion of hearing on, or other prompt disposition of motion is excluded). Therefore, the time from August 4, 2004 through August 1, 2005 was also properly excluded.

In summary, the magistrate judge excluded the time until August 4, 2004 after finding that such delay met the ends of justice[14] and in accordance with *Zedner*, properly stated his reasons for invoking this exclusion. The time from August 4, 2004 through August 1, 2005 was excludable because of pending defense motions. Under these circumstances, there was no basis for appellate counsel to mount a Speedy Trial Act challenge based on the exclusion of time from the dates of the Pakala's and his co-defendant's arraignments through August 1, 2005. Therefore, Pakala cannot satisfy the first prong of *Strickland* with respect to this claim and the claim should be denied.

---

[13] Since the time would properly be excluded because the motion to suppress remained pending, it is not necessary for me to parse through the record to determine whether the time was otherwise excludable. Nonetheless, I will note that the following additional motions were also pending during this period, *i.e.,* August 4, 2004-August 1, 2005: the Government's motion to compel fingerprints, palm prints and/or DNA from interested third parties; and additional discovery requests filed by Pakala. Furthermore, Pakala filed a motion seeking new counsel on February 15, 2005; that motion was granted on May 2, 2005 and new counsel was appointed on May 5, 2005.

[14] Additionally, a substantial portion of the time during this period would properly be excluded because of pending defense motions.

## Conclusion

For the foregoing reasons:

1. It is hereby recommended that the Motion Under 28 U.S.C. §2255 To Vacate, Set Aside, Or Correct Sentence (Docket No. 171), filed by John Pakala be ***dismissed.***

2. It his hereby ordered that the Government's Motion For An Order Permitting Disclosure Of Attorney-Client Information (Docket No. 175) be ***denied, as moot***.

## Notice to the Parties

The parties are advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court WITHIN 14 DAYS of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objection.  The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review of the District Court's order based on this Report and Recommendation.  *See Keating v. Secretary of Health and Human Services,* 848 F.2d 271 (1ˢᵗ Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1ˢᵗ Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1ˢᵗ Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1ˢᵗ Cir. 1982);  *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1ˢᵗ Cir. 1980).  *See also, Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466 (1985).


**/s/** Timothy S. HIllman
**TIMOTHY S. HILLMAN**
**UNITED STATES MAGISTRATE JUDGE**